## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | | |
|---|---|---|---|
| MARCELINO CENICEROS, | ) | | |
| and JESUS CABRAL, individually, | ) | | |
| and on behalf of similarly situated | ) | | |
| individuals, | ) | | |
| | ) | | |
| Plaintiffs, | ) | No. | 18-CV-1759 |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| PACTIV, LLC | ) | | |
| | ) | | |
| Defendant. | ) | | |

## COMPLAINT

Plaintiffs, Marcelino Ceniceros and Jesus Cabral, by and through their

attorneys, the Law Offices of Sean C. Starr, and for their complaint against

Defendant, Pactiv, LLC, state as follows:

## INTRODUCTION

1.     This is an individual, collective, and class action brought by Plaintiffs,

Marcelino Ceniceros ("Ceniceros") and Jesus Cabral ("Cabral") (or collectively,

"Plaintiffs"), on behalf of each individually and all other similarly situated

individuals (the "putative class") for purposes of obtaining relief under the federal

Fair Labor Standards Act of 1938 as amended, 29 U.S.C. §201, *et. seq.* (hereinafter

"FLSA"), the Illinois Minimum Wage Law, § 820 ILCS 105/1 *et. seq.* (hereinafter

"IMWL"), and the Illinois Wage Payment Collection Act as amended, § 820 ILCS

11511, *et. seq.* (hereinafter "IWPCA") for unpaid compensation, unpaid overtime

compensation, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or any such other relief the Court may deem appropriate.

2.    Plaintiffs Ceniceros and Cabral, and the putative class are or were employees of Defendant, within the meaning of FLSA, 29 U.S.C. §203, and IMWL 820 ILCS 105/3. As shown by the written consent of Plaintiffs Ceniceros and Cabral, attached to this complaint as *Exhibit 1*, Plaintiffs have consented to become members of this collective action pursuant to 29 U.S.C. §216(b). Additionally, Plaintiffs Ceniceros and Cabral, allege class action IMWL and IWPCA claims, on behalf of employees similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.    Defendant has willfully violated the FLSA, IMWL, and IWPCA by intentionally failing and refusing to pay Plaintiffs and putative class members all compensation due them under the FLSA, IMWL, and IWPCA and its implementing regulations over the course of the last several years. Defendant administered a compensation system that failed to provide premium overtime compensation to employees that work in excess of forty (40) hours a week by: 1) "averaging hours" of the putative class over two work weeks; 2) by not paying them for all the time that they, in fact, worked; and, 3) failing to include nondiscretionary bonus payments into their regular rate of pay.

## JURISDICTION

4.    Jurisdiction over this action is conferred on this Court by 29 U.S.C. §216(b) and, 28 U.S.C. §§1331, 1337, and 1367.

2

5. This court is the proper venue pursuant to 28 U.S.C. §1391(b).

## PARTIES

6. The individual Plaintiffs and putative class are employees of Defendant, within the meaning of FLSA §203(e) and IWPCA § 820 ILCS 115/2, and IMWL, § 820 ILCS 105/3. At all times relevant to this Complaint, Plaintiffs, Ceniceros and Cabral, have been employed by Defendant, Pactiv, LLC, as machine operators. Plaintiffs are both adult resident citizens of the Northern District of Illinois.

7. Plaintiff Ceniceros has been employed by Defendant for almost twenty (20) years.

8. Plaintiff Cabral has been employed by Defendant for almost thirty (30) years.

9. The Defendant, Pactiv LLC, is an employer in the Northern District of Illinois within the meaning of FLSA § 29 U.S.C. 203(d) and IWPCA § 820 ILCS 115/2.

## FACTS COMMON TO ALL CLAIMS

10. Plaintiffs and the putative class work or have worked within the past three years for Defendant Pactiv, LLC in their respective capacities as non-exempt FLSA, IWCPA and IMWL employees.

11. Plaintiffs and the putative class were compensated on an hourly basis.

3

12.    Plaintiffs and the putative class all work at Defendant's plastic processing plant (the "Factory").

13.    Plaintiffs and the putative class routinely worked in excess of forty (40) hours per week for Defendant, but Defendant has failed and refused to pay them correct time-and-one-half overtime compensation for the hours they worked in excess of 40 hours in numerous, given weeks and, Defendant continues this practice with regard to the Plaintiffs and putative class members through the present day.

14.    By failing and refusing to pay the Plaintiffs and putative class members' time-and-one-half overtime compensation for the hours they worked in excess of 40 in numerous weeks, Defendant violated a long standing employment agreement in which Defendant agreed to, and previously did, pay overtime at a rate of 1.5 times the regular rate.

15.    Defendant failed and refused to pay certain putative class members at least the minimum wage for the hours they worked; and, the Defendant continues this practice with regard to putative class members through the present day.

16.    Upon information and belief, Defendant knew that Plaintiffs and the putative class performed work that required payment of wages and overtime compensation. Upon information and belief, Defendant has operated under a scheme to deprive these employees of the requisite compensation by failing to compensate Plaintiffs and the putative class for all hours worked.

4

17.     Upon information and belief, Defendant knew that its scheme to deprive these employees of the proper overtime compensation was in violation of federal and Illinois state law.

## Plaintiffs and the Prospective Putative Class Members' Work at the Factory

18.     Plaintiffs and putative class members all are hourly factory workers dedicated to manufacturing Defendant's primary product: Reynold's Plastic Wrap.

19.     A significant percentage of the putative class are non-native English speakers.

20.     As such, many putative class members are not fluent English speakers. Defendant took advantage of the putative class members' lack of English fluency when it implemented a scheme to deprive the putative class of the overtime pay they worked hard to earn.

21.     Plaintiffs and putative class work long, hard hours in the Factory. Many live paycheck to paycheck. The overtime pay Plaintiffs and putative class members earn is very valuable to their individual livelihood.

22.     Plaintiffs and the putative class members are primarily employed as "Machine Operators," "Packers," "Grinders," or "Maintenance Workers." Each of these four categories of employees collectively contribute to the same end product and they all have worked hourly overtime that Defendant failed to properly compensate them for.

23.     Machine Operators work the assembly line to turn raw bulk plastic into commercial product.

24.     Packers work to package the commercial product that the Machine Operators produce.

25.     Grinders work to grind up or recycle the leftover scrap plastic byproduct produced by the Machine Operators.

26.     Maintenance Workers work to keep the Factory and its machines clean and safe.

27.     When Plaintiffs and the putative class arrive and when they leave the Factory, they clock in and out of an electronic time clock.

28.     Plaintiffs and the putative class members have always worked a schedule wherein during one week they work three (3) days and during the following week they work four (4) days (the "3/4 Schedule"). Plaintiffs and putative class members have continuously worked this schedule for, at a minimum, the last ten (10) years.

29.     Plaintiffs and putative class members are all grouped into to a "letter" (either A, B, C, or D) and a "color" (either RED or BLUE).

30.     Generally, the A/C RED groups work three (3) days a week when the B/D BLUE groups work four (4) days a week. Similarly, the A/C RED groups works four days (4) days a week when the B/D BLUE groups work three (3) days a week.

31.     Plaintiffs and putative class members are paid hourly and on a weekly basis.

6

32.    Upon information and belief, the established work week for Plaintiffs and the putative class is Sunday through Saturday.

33.    As evidenced by Plaintiffs' paystubs, Plaintiffs are paid weekly for work performed during the Sunday through Saturday workweek.

34.    Upon information and belief, putative class members are paid weekly for work performed during the Sunday through Saturday workweek.

35.    Plaintiffs and the putative class members all work twelve (12) hour shifts each work day.

36.    Accordingly, Plaintiffs and putative class members 3/4 Schedule requires them to work thirty-six (36) and forty-eight (48) hours (not accounting for unpaid lunch breaks) in alternating work weeks.

37.    For the majority of time Plaintiffs and putative class members have worked for Defendant, they would, in alternating weeks, work and be paid for approximately 34.5 hours of "straight-time" regular rate of pay (36 hours minus three 30 minute lunch breaks). Similarly, in alternating weeks, Plaintiffs and the putative class members historically worked and were paid for approximately 40 hours of "straight-time" regular rate of pay and six (6) hours of "overtime" time-and-a-half rate of pay (48 hours minus four 30 minute lunch breaks).

38.    Up until approximately four to five years ago, Defendant properly paid Plaintiffs and putative class members time and half (1.5) their regular rate of pay for all overtime hours worked.

7

**Defendants' Scheme to Avoid Paying Overtime Compensation and Minimum Wage
to the Plaintiffs and the Putative Class Members**

39. On Defendant's website, under the heading "Pactiv LLC Policy on Social Accountability and Ethical Treatment," it professes to have a workplace where employees are not subject to "unlawful discrimination in hiring, compensation, access to training, promotion, termination or retirement based on age, gender, race, color, caste, national origin, disability, religion or veteran status."

40. Contrary to this policy, Defendant instituted a scheme to deprive Plaintiffs and the putative class members their overtime pay.

41. Approximately four to five years ago, Defendant hired Edward Quintania ("Quintania") as its Plant Manager. As Plant Manager, Quintania was Defendant's supervisor in charge of the Factory's daily operations.

42. Sometime after his hiring, Quintania instituted a new payment plan for Plaintiffs and putative class members.

43. Upon information and belief, Quintania did not institute this new payment plan for business purposes, but instead solely instituted it to deprive Plaintiffs and putative class members of their hard earned overtime pay. This illegal payment scheme decreased the number of overtime hours Defendant paid Plaintiffs and putative class members (the "Payroll Scheme").

44. Upon information and belief, Quintania gathered Plaintiff Jesus Cabral and other similarly situated employees and told them that Illinois law had changed and that they were all now required to perform 40 hours of work per week.

8

Quintania further explained that the nature of work at the Factory, however, still required that they continue working the 3/4 12-hour shift schedule. Quintana told the employees that because this alleged new Illinois law required them to work 40 hours, Defendant would begin averaging their hours to make it look like they were all working 40 hours a week. Quintana explained this in English to the significantly non-native English speaking employees.

45.     After the meeting, at least one supervisor told Plaintiff Cabral and other members of the putative class were told that they would continue to be paid the same amount despite the changes to their pay structure.

46.     Instead, the Payroll Scheme required that all Machine Operators, Packers, Grinders, and Maintenance Workers would begin being paid for 40 straight-time hours of work every week, regardless of whether they worked 34.5 or 46 hours in a given work week.

47.     Plaintiff Ceniceros was not present for this meeting.

48.     Under Quintania's direction of the Payroll Scheme, Defendant began issuing paychecks every week that showed, on paper, Plaintiffs and putative class members were working 40 hours a week, with some additional small variations of overtime. When that overtime appeared, it was usually only approximately fifteen (15) minutes.

49.     Despite being paid for 40 hours a week every week, Plaintiffs and putative class members never deviated from their established 3/4 Schedule.

50.     In addition to the Payroll Scheme, Quintania instituted a policy in which Plaintiffs and the putative class members are given daily performance quotas dictating how much plastic Defendant wanted them to render or package ("daily quotas").

51.     Quintania explained that keeping the machines running so that Plaintiffs and putative class members met their daily quotas was of the utmost importance.

52.      Quintania continuously reminded Plaintiffs and putative class members of their need to meet the daily quotas and pressured them to do so.

53.      Quintania made it known that Plaintiffs' and putative class members' continued employment depended upon satisfying their daily quotas.

54.     Plaintiffs and putative class members rarely, if ever, miss their daily quotas.

55.     Additionally, as part of the Payroll Scheme, Defendant also began automated meal break deductions of 30 minutes from Plaintiffs and putative class members' pay records each workday, whether time was taken for lunch or not.

56.     Additionally, as part of the Payroll Scheme, Defendant failed to compensate Plaintiffs or putative class members for any time worked beyond an additional fifteen minutes incurred at either the beginning or end of any given shift.

57.     Additionally, as part of the Payroll Scheme, Defendant failed to include any and all nondiscretionary bonus pay into Plaintiffs and the putative class members' regular rate of pay when calculating overtime pay.

### Plaintiff Ceniceros' Inquiry Regarding His Overtime Hours

58.     About a month after Quintania informed a group of Machine Operators, Packers, Grinders, and Maintenance Workers about the averaging of hours, Plaintiff Ceniceros noticed that he was getting paid less overtime on his every-other-week paycheck.

59.     Ceniceros asked Plaintiff Cabral about the discrepancy. Cabral told Ceniceros what Quintania had told the employees about Illinois law requiring employees to all work 40 hours a week.

60.     This did not make sense to Ceniceros. He asked several other employees about the discrepancy. Everyone he asked told him what Cabral had told him: Quintania said a new Illinois law required it.

61.     Cabral and the other employees also expressed their dissatisfaction to Ceniceros regarding the alleged new law that, in theory, required them to work 40 hours a week and, in practice, led to Defendant paying them for only 40 straight-time hours a week regardless of whether they worked more than 40 hour in a given week.

62.     Ceniceros volunteered to go talk to the Factory's human resources ("HR") representative and get a better understanding of why the employees were losing the overtime that was very valuable to them.

11

63. Ceniceros took his pay stub to HR and met with a woman named "Anna" who worked in the office. Anna explained to Ceniceros that the law required everyone to work 40 hours and, as such, Defendant was splitting up hours worked in order to average out the work weeks' hours to equal forty hours in each week. Ceniceros told her that he never agreed to the change, but that he was in jeopardy of missing his daily quota, so he had to go back to the assembly line.

64. The following week, Ceniceros spoke directly to Defendant's HR manager, Eva Vera, and she told him the same thing that Anna had told him.

65. Another one of Defendant's employees, a man named, "Bogdan," met with Quintania and other members of Defendant's management to also express his disagreement with the averaging of hours. Bogdan left the meeting with a different pay structure than the rest of the Machine Operators, Packers, Grinders, and Maintenance Workers.

66. As a result of the averaging of hours over two work weeks, Plaintiffs and the putative class members have lost significant income in the form of overtime hours.

### Defendant Failed to Compensate Plaintiffs and the Putative Class for all Time Worked Before and after their Regularly Scheduled Shifts

67. Because of the daily quotas, Plaintiffs and putative class members arrive early to the factory in order to retrieve all relevant equipment, tools, and clothing needed to perform their daily work and get to their respective work areas by the start of their shift.

68.    Plaintiffs and putative class members routinely clock in upon arrival at the Factory.

69.    However, as part of the Payroll Scheme, Defendant failed to compensate Plaintiffs or putative class member for any time worked that exceeds an additional fifteen minutes beyond their regular 12-hour work day incurred at either the beginning or end of any given shift.

### Defendant Failed to Compensate Plaintiffs and the Putative Class for Time Worked During Lunch Breaks

70.    As a result of the daily quotas, Plaintiffs and the putative class members are required to regularly work through their lunch breaks.

71.    Plaintiffs and the putative class members regularly eat their lunch on the assembly line. Alternatively, Plaintiffs and the putative class members eat their lunch very quickly in a matter of minutes in order to get back to the assembly line.

72.    Defendant supervisors are aware that Plaintiffs and the putative class members regularly work through their lunch breaks.

73.    In some cases, Defendant supervisors have approached Plaintiffs and putative class members during their 30 minute lunch breaks and instructed Plaintiffs and putative class members to return to the assembly line machines in order to assure that they meet their daily quotas.

74.    Regardless of the fact that Plaintiffs and putative class members regularly work through their lunch breaks, Defendant still deducts 30 minutes of

time automatically from Plaintiffs and putative class members' daily work day hours.

75.     Defendant has no informal or formal system in place by which Plaintiffs and putative class members may seek compensation for work performed during lunch breaks.

### Defendant Failed to Include All Nondiscretionary Bonus Payments into Plaintiffs and Putative Class Members' Regular Rate of Pay

76.     Defendant has deprived Plaintiffs and putative class members of the requisite compensation by failing to properly compensate them for all hours worked in excess of forty (40) in a given work week at one and one-half (1½) times their regular rate of pay.

77.     During the relevant period, Defendant administered non-discretionary bonuses to its non-exempt employees that resulted in Plaintiffs and the putative classes being paid overtime at a rate less than one and one-half (1½) times their regular rate when any of them earned a bonus.

78.     Specifically, the non-discretionary bonuses resulted in additional bonus money being paid out in given paychecks to Plaintiffs and the putative class that was performance-based wherein the Defendant must meet certain expected achievements or attendance thresholds in order for the Defendant to pay a bonus to its employees.

79.     Defendant failed to include any of the bonus payments paid to Plaintiffs and the putative class into its calculation of the regular rate for these employees.

80.    Incentive, or bonus, payments, such as those made by Defendant to Plaintiffs and the putative classes, should have been included in the regular rate of pay.

81.    Defendant's conduct, as set forth in this complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and putative class members.

## COUNT I

### Violation of the Fair Labor Standards Act – Overtime Wages

82.    Plaintiffs hereby incorporate paragraphs 1 through 81 as though stated herein.

83.    At all times relevant, Plaintiffs have been "employees" under the FLSA, 29 U.S.C. § 203(e)(1), and Plaintiffs have not been exempt from the overtime wage provisions of the FLSA, 29 U.S.C. § 207.

84.    During the course of the Plaintiffs' employment, Defendant employed other Machine Operators, Packers, Grinders, or Maintenance Workers who were similarly not exempt from the overtime wage provisions of the FLSA.

85.    At all times relevant, Defendant has been an "employer" as defined in the FLSA, 29 U.S.C. § 203(d).

86.    Defendant has operated as an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A). Upon information and belief, Defendant's annual gross revenue has exceeded $500,000 at all relevant

times and their employees have regularly handled, sold or otherwise worked on goods and materials that have been moved or produced for commerce.

87. Pursuant to 29 U.S.C. § 207, for all weeks during which Plaintiffs and other Machine Operators, Packers, Grinders, and Maintenance Workers worked in excess of forty (40) hours, Plaintiffs and the other Machine Operators, Packers, Grinders, and Maintenance Workers were entitled to be compensated at a rate of one and one-half times their normal hourly rate of pay.

88. Defendant's failure and refusal to pay overtime wages for hours worked in excess of forty (40) hours per week was a violation of the Fair Labor Standards Act, 29 U.S.C. § 207. Defendant failed and refused to pay FLSA overtime in the following ways:

A. Defendant instituted a pay system designed to avoid the payment and reporting of hours worked by its employees in excess of forty (40) per week by averaging hours worked over two work weeks.

B. Defendant instituted a pay system designed to avoid the payment and reporting of hours worked by its employees in excess of forty (40) per week by automatically deducting .50 hours per work day regardless of whether Plaintiffs worked during their lunch breaks or not.

C. Defendant instituted a pay system designed to avoid the payment and reporting of hours worked by its employees in excess of forty (40) per week by automatically deducting any additional time worked in excess of 15 minutes over Plaintiffs scheduled 12 hour shift regardless of whether Plaintiffs worked in excess of 15 minutes.

D. Defendant administered non-discretionary bonuses for its non-exempt employees without including the bonuses into the regular rate.

89. Defendant's violation of the Fair Labor Standards Act by refusing to pay Plaintiffs' overtime wages was willful and not in good faith.

16

**WHEREFORE**, the Plaintiffs, Marcelino Ceniceros and Jesus Cabral, on behalf of themselves and all other plaintiffs similarly situated, known and unknown, pray for a judgment against Defendant, Pactiv, LLC, as follows:

A. At the earliest possible time, issue an Order allowing Notice or issue such Court supervised Notice to all similarly situated current and former Pactiv, LLC employees of this action and their rights to participate in this action. Such Notice shall inform all similarly situated current and qualified former employees of the pendency of this action, the nature of this action, and of their right to "opt in" to this action. Additionally, such notice will include a statement informing said employees that it is illegal for Pactiv, LLC to take any actions in retaliation of their consent to join this action;

B. Payment for all hours worked;

C. Inclusion of all non-discretionary bonus payments into the regular rate of pay;

D. Judgment in the amount of unpaid overtime compensation found due at the rate of one and one-half times Plaintiffs' hourly wage rates for all hours which Plaintiffs worked in excess of forty (40) hours per week;

E. Liquidated damages in an amount equal to the amount of unpaid overtime compensation found due;

F. Reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

D. Such other and further relief as this Court deems appropriate and just.

## COUNT II

### Violation of the Illinois Minimum Wage Law – Overtime Wages

90. Plaintiffs hereby incorporate paragraphs 1 through 91 as though stated herein.

17

91.    At all times relevant, Plaintiffs have been "employees" under the IMWL, 820 ILCS § 105/3(d), and have not been exempt from the overtime wage provisions of the IMWL, 820 ILCS § 105/1 *et seq.*

92.    During the course of the Plaintiffs' employment, Defendants employed other Machine Operators, Packers, Grinders, and Maintenance Workers who were similarly not exempt from the overtime wage provisions of the IMWL.

93.    At all times relevant, Defendant has been an "employer" as defined in the IMWL, 820 ILCS § 105/3(c).

94.    Upon information and belief, Defendant's Payroll Scheme resulted in certain members of putative class to be paid less than the Illinois state mandated minimum wage.

95.    Furthermore, pursuant to 820 ILCS § 105/4(a), for all weeks during which Plaintiffs and other Machine Operators, Packers, Grinders, and Maintenance Workers worked in excess of forty (40) hours, Plaintiffs and the other Machine Operators, Packers, Grinders, and Maintenance Workers were entitled to be compensated at a rate of one and one-half times their normal hourly rate of pay.

96.    This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) because the putative class is so numerous that joinder of all class members is impracticable.

97.    Plaintiffs and the putative class have all been affected by Defendant's unlawful non-payment of compensation and wages.

98.    Plaintiffs' experiences are typical of the experiences of the putative class employed by Defendant.

99.    The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations, if any, which may exist between the members of the class.

100.    Plaintiffs and the putative class have a commonality of interest in the subject matter and the remedy sought.

101.    Plaintiffs are able to fairly and adequately represent and protect the interests of the putative class.

102.    Plaintiffs' counsel is competent and experienced in litigating large wage and hour class and collective actions.

103.    If individual actions were required to be brought by each member of the classes injured or affected, the result would be a multiplicity of actions, creating a hardship to Plaintiffs and the putative class, to the Court and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

104.    Defendants' failure and refusal to pay overtime wages for hours worked in excess of forty (40) hours per week was a violation of the IMWL, 820 ILCS § 105/4(a). Defendant failed and refused to pay IMWL overtime in the following ways:

A.    Defendant instituted a pay system designed to avoid the payment and reporting of hours worked by its employees

in excess of forty (40) per week by averaging hours worked over two work weeks.

B.  Defendant instituted a pay system designed to avoid the payment and reporting of hours worked by its employees in excess of forty (40) per week by automatically deducting .50 hours per work day regardless of whether Plaintiffs worked during their lunch breaks or not.

C.  Defendant instituted a pay system designed to avoid the payment and reporting of hours worked by its employees in excess of forty (40) per week by automatically deducting any additional time worked in excess of 15 minutes over Plaintiffs scheduled 12 hour shift regardless of whether Plaintiffs worked in excess of 15 minutes.

D.  Defendant administered non-discretionary bonuses for its non-exempt employees without including the bonuses into the regular rate.

**WHEREFORE**, the Plaintiffs, Marcelino Ceniceros and Jesus Cabral, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, pray for a judgment against Defendants, Pactiv, LLC, as follows:

A.  Determine that this action may be maintained as a class action, pursuant to Fed. R. Civ. P. 23;

B.  Appoint Plaintiff Ceniceros and Cabral as Class representative;

C.  Appoint Plaintiffs' Counsel as Counsel for the Class;

D.  Award Plaintiffs and the putative class monetary damages in the form of Payment for all hours worked;

E.  Award Plaintiffs and the putative class inclusion of all non-discretionary bonus payments into the regular rate of pay;

F.  Award Plaintiffs and the putative class judgment in the amount of unpaid overtime compensation found due at the rate of one and one-half times Plaintiffs' hourly wage rates for all hours which Plaintiffs worked in excess of forty (40) hours per week;

G.    Award Plaintiffs and the putative class Statutory interest damages at the rate of two percent (2%) of the amount of underpayments per month for as long as such underpayments remain unpaid;

H.    Award Plaintiffs and the putative class reasonable attorneys' fees and costs incurred in filing and prosecuting this action; and

I.    Award Plaintiffs and the putative class such other and further relied as this Court deems appropriate and just.

## COUNT III

### Violation of the IWPCA – Overtime Wages

105.   Plaintiffs hereby incorporate paragraphs 1 through 96 as though stated herein.

106.   At all times relevant to this action, the Defendant was the Plaintiffs' "employer" as defined by the IWPCA.

107.   At all times relevant to this action, the Plaintiffs were the Defendant's "employees" as defined by the IWPCA.

108.   At all times relevant to this action there existed an agreement between the Plaintiffs and the Defendant that the Defendant would pay the Plaintiffs at a fixed rate of pay per hour for all of the hours that the Plaintiffs worked up until forty (40) hours worked.

109.   At all times relevant to this action there existed an agreement between the Plaintiffs and the Defendant that the Defendant would pay the Plaintiffs at a fixed rate of 1.5 times their regular rate per hour for all of the hours that the Plaintiffs worked in excess of forty (40) hours.

110.   The  Defendant  has  breached  said  agreement  in  that  the Defendant failed to pay Plaintiffs 1.5 times their regular rate for all hours worked in excess of forty (40).

111.   Among  other  ways,  the  Defendant  violated  the  IWPCA  by  engaging in  hours  averaging  which  resulted  in  time-shaving  on  Plaintiffs'  overtime  hours due, and wherein the Defendant simply failed and refused to pay the Plaintiffs for certain overtime hours that they worked altogether.

112.   The  Defendant's  actions  as  described  herein  above,  namely  the continuing refusal to pay certain wages to the Plaintiffs as the result of the hours averaging  described  above,  constitutes  a  violation  of  the  IWPCA  in  that  the Defendant have failed to pay the Plaintiffs earned wages within the time period mandated  by  the  IWPCA  at  least  semi-monthly.

This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) because the putative class is so numerous that joinder of all class members is impracticable.

113.   Plaintiffs and the putative class have all been affected by Defendant's unlawful non-payment of compensation and wages.

114.   Plaintiffs' experiences are typical of the experiences of the putative class employed by Defendant.

115.   The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations, if any, which may exist between the members of the class.

116.   Plaintiffs and the putative class have a commonality of interest in the subject matter and the remedy sought.

117.   Plaintiffs are able to fairly and adequately represent and protect the interests of the putative class.

118.   Plaintiffs' counsel is competent and experienced in litigating large wage and hour class and collective actions.

119.   If individual actions were required to be brought by each member of the classes injured or affected, the result would be a multiplicity of actions, creating a hardship to Plaintiffs and the putative class, to the Court and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

**WHEREFORE**, the Plaintiffs pray for judgment in their favor and against the Defendants, and for the following relief:

A.   Determine that this action may be maintained as a class action, pursuant to Fed. R. Civ. P. 23;

B.   Appoint Plaintiff Ceniceros and Cabral as Class representative;

C.   Appoint Plaintiffs' Counsel as Counsel for the Class;

D.   Award Plaintiffs  and the putative class monetary damages in an amount equal to the unpaid overtime wages due and owing to the Plaintiffs for each hour the Plaintiffs worked for the Defendants, but for which the Defendant failed to pay the Plaintiffs at a rate not less than the regular rate of pay per hour, which rate the Plaintiffs and the Defendant had agreed upon;

E.     Award Plaintiffs and the putative class statutory punitive damages as allowed by the IWPCA;

F.     Award Plaintiffs and the putative class interest on all amounts awarded;

G.     Award Plaintiffs and the putative class attorneys' fees, together with costs of suit and collection; and

H.     Award Plaintiffs and the putative class such further relief as may be fair and just in the premises.

## JURY DEMAND

The Plaintiffs hereby demand a trial by jury of all issues set forth herein that are capable of being tried by a jury.

Respectfully submitted,

/s/Sean C. Starr
One of the Plaintiffs'
Attorneys

Law Offices of Sean C. Starr
540 W. Frontage Road
Suite 3020
Northfield, Illinois 60093
(773) 368-9930